**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**YVONNE ROYAL,**

    **Plaintiff,**

**v.**                                                       **Case No. 8:04-cv-2810-T-TBM**

**JO ANNE B. BARNHART,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
                                              /

**O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty-nine years of age at the time of her administrative hearing. She stands 5', 7" tall and weighed 228 pounds. Plaintiff has a ninth grade education and no past relevant work, although she raised twelve children. Plaintiff applied for Supplemental Security Income payments on February 28, 2002, alleging disability as of November 1, 1996, by reason of pain and pressure in her legs and feet, fluid in her legs and feet, impaired

walking and lifting, and pressure in her chest.[1]  The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"), where she appeared without representation.  In essence, Plaintiff claimed that she could no longer work at any job by reason of swelling and pain in her legs and feet, which began in about 1999 and still occurs.  She expresses a rather vague problem with the lower part of her back, as well.  According to the Plaintiff, her balance is off, and she is unable to walk straight and has difficulty standing.  The use of a cane helps some.  Plaintiff also describes problems with her throat.  For a period of time in about 1996, she was unable to swallow and had to have an operation.  Plaintiff indicates she has no problems using her arms and hands.  She wears glasses to read.  She claims that occasionally she will have problems with breathing because of eating certain foods.

By the Plaintiff's testimony, she raised twelve children, only one of whom is still at home.  She is able to perform only minimal housework and relies on her son to assist her with cleaning, cooking, and other such chores, although she admits that she cooks a little, can make the bed, sweeps a little, bathes and dresses herself, and does a little grocery shopping.  She does not drive.  She goes to church every Sunday and is an usher.  She also occasionally visits friends.  Plaintiff testified that she has difficulty sleeping through the night and wakes

---

[1] The Plaintiff filed prior applications for Social Security benefits in 1992, 1996, and 2000.  All applications were denied.  Because the most recent unfavorable decision was made on February 18, 2000, the onset date for disability on this application was amended to February 19, 2000.

frequently. Plaintiff indicates she takes Monopril for her fluid build-up, Tylenol PM, and Neurontin for pain. Plaintiff can read and write and perform simple math calculations.

In a typical day, Plaintiff mostly sits in a chair and occasionally watches television. She is unable to lift anything heavy, and even lifting a basket of clothes causes her pain in her chest. She indicates she might be able to lift ten pounds. Walking is very difficult because of the pressure in her legs and feet. Even walking to her mailbox causes her pain. According to the Plaintiff, she has no real problems sitting, and she indicated to the ALJ that if she had a job where she could mostly sit, she could do that job. Occasionally during the day, she will lie down for short periods of time. See Plaintiff's testimony (R. 39-64).

The ALJ also took testimony from Gerald Wili, a vocational expert (hereinafter "VE"). The VE was asked to assume an individual of the same age, education, and work experience as the Plaintiff who retains the residual functional capacity for a limited range of light work with additional limitations for sitting and walking for six hours in an eight day; limited pushing and pulling; only occasional climbing, balancing, stooping, crouching, kneeling, and crawling; but capable of fine and gross manipulations. Upon this hypothetical, the VE opined that Plaintiff could work as a cashier, counter attendant in a cafeteria, and sales attendant. If, upon the same hypothetical, the individual's ability to stand or walk was further limited to three hours in an eight-hour work day, she would be unable to perform these jobs but could perform work as a sewing machine operator, bench assembler, and solderer of small parts. See (R. 64-68).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By his decision of April 6, 2004, the ALJ determined that while Plaintiff has severe impairments related to obesity with balance problems, chronic lumbar strain, hypertension, and peripheral neuropathy with swelling in her legs and feet, she nonetheless had the residual functional capacity to perform light exertional work with limitations for standing, walking, and/or sitting six hours a day; and only occasional climbing, balancing, stooping, crouching, kneeling, and crawling; with the ability to do fine and gross manipulations with both hands. Upon this finding, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 20-27). On October 20, 2004, the Appeals Council initially denied Plaintiff's request for review. On October 27, 2004, the Appeals Council set aside that order to consider additional information but found no reason to reconsider the ALJ's decision, and the request for review was denied. As a consequence, the ALJ's decision became the final decision of the Commissioner. (R 4-6).

II.

In order to be entitled to and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A

4

"physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner erred in failing to develop the record with regard to crucial matters in this case; and

(2) The Commissioner failed to give proper weight to the opinion of an examining medical source.

By her first claim, Plaintiff alleges that the ALJ failed to develop the record adequately and fully by failing to order a consultative examination regarding Plaintiff's psychological difficulties. According to the Plaintiff, because the decision recognized a history of depression and nerve problems and that Plaintiff had been prescribed anti-depressant medication, the ALJ was obliged to order a consultative examination before deciding her claim. In support of her position, Plaintiff cites the decision in McCall v. Bowen, 846 F.2d 1317 (11th Cir. 1988), and urges that in a case where evidence supports the existence of a mental impairment, the Act requires the ALJ to make all reasonable effort to

6

obtain the opinion of a qualified psychiatrist or psychologist. Id. at 1320 (citing 42 U.S.C. § 421(h)).

Plaintiff is correct that the ALJ has a duty to develop a full and fair record. Because of this duty, the Eleventh Circuit has held that "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." Holladay v. Bowen, 848 F.2d 12061209 (11th Cir. 1988) (quoting Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984)). However, after careful consideration of the record, I cannot agree that a remand is necessary for further development of the psychiatric or psychological record.

Here, the medical record before the ALJ does not support that Plaintiff suffered a severe mental impairment and significantly, and Plaintiff never claimed that she did. While Plaintiff cites the correct standard concerning the duty of the ALJ to develop a full and fair record, the law also places the ultimate burden of proof on disability with the Plaintiff. See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) ("Nevertheless, the Plaintiff bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim. 20 C.F.R. § 416.912(a). . . ."). Plaintiff brought forth no evidence, especially during the pertinent time frame, to suggest a mental condition warranting further consideration. Contrary to Plaintiff's argument, the decision in McCall does not require a consultative evaluation in this instance and is, in any event, factually distinguishable. There, the court found sufficient suggestion in the medical record and from the claimant's testimony to possibly warrant a further consultative evaluation. As stated by the court in McCall:

7

> Along with her own testimony of mental problems, the
> suggestions made by her treating physicians might well be
> enough to require the appointment of a psychiatrist or
> psychologist under the requirements of [42 U.S.C.] section
> 421(h). Certainly, since the case has to be remanded for
> proper handling of the overweight problem, the applicability
> of section 421(h) must be carefully considered.

Id. at 1320. Here, Plaintiff did not claim a severe mental impairment, and the medical record before the ALJ gave no hint of one. Indeed, it suggested the contrary, as determined by the ALJ.[2] I therefore conclude that the ALJ was not required to seek a further consultative examination in order to make a final decision on this application.

By her second claim, Plaintiff complains that the ALJ failed to credit the opinion of Dr. Linkous that she could do sedentary work. By Dr. Linkous's evaluation, Plaintiff suffered a history of hypertension, peripheral neuropathy, depression controlled by medication, obesity, and some venous insufficiency due to her weight. He concluded by stating, "She can do sedimentary type work depending on the complexity due to her educational background." (R. 162). In light of this conclusion, Plaintiff urges that the ALJ erred in finding that this examination showed no reason why the Plaintiff could not stand or walk for six hours in an eight-hour day. Plaintiff also cites to the notes from podiatrist, "Dr. Kaplan," who noted that Plaintiff could not wear normal shoe gear and suffered inflammation and pain with

---

[2]A review of the medical record reveals very limited reference to Plaintiff's mental health. In one instance, consultative examiner, Dr. Clayton Linkous, M.D., noted on June 11, 2002, "a history of nerve problems in the past but is not on any medication except Amitriptyline 25mg at bedtime." (R.160). He concluded she was "pleasant and cooperative without evidence of depression or anxiety." (R. 162). Dr. Carol Deatrick, Ph.D., a non-examining psychologist, found no evidence of a mental health complaint or treatment. (R. 184). Upon my review, it is not at all clear that the Amitripyline referenced by Dr. Linkous was prescribed for nerves or depression. Treatment notes indicate that the Elavil was actually prescribed for Plaintiff's complaints of peripheral neuropathy, not depression. See (R. 186-233).

8

neuropathy of the forefoot. According to Plaintiff, had the ALJ concluded she was limited to sedentary work, the grids would suggest a conclusion of disabled. After careful consideration of the medical record, I conclude that Plaintiff is not entitled to relief on this claim.

As reflected in the decision, Plaintiff's medical records reveal treatment for, among other things, hypertension, cellulitis, neuropathy, and obesity. On two occasions, she received treatment for complaints of foot pain in connection with painful toenails. A review of the treatment notes, especially from the Community Health Center and the Lee Davis Health Center reflects that, apart from her obesity, Plaintiff's conditions responded well to medication.[3] Significantly, none of these treatment records suggest functional limitations requiring a finding that Plaintiff could only do sedentary exertional work. On the contrary, a note from Dr. Sarah Poblete, M.D., of the Lee Davis Health Center, indicates that Plaintiff was capable of engaging in "light work." (R. 272). Also, a review of these treatment notes does not reveal complaints of the severe symptoms testified to by the Plaintiff at the hearing. Her treatment was generally by way of medication and she was urged to lose weight and exercise. As for Dr. Linkous, a fair reading of his report suggests that his conclusions were based chiefly upon Plaintiff's subjective complaints and history, not on his own findings. The ALJ's statement that Dr. Linkous's own findings reveal no condition that would render Plaintiff unable to stand or walk six hours in an eight-hour workday appears an accurate conclusion from the doctor's findings, and Plaintiff does not demonstrate otherwise.

---

[3] The medical record reflects two unsigned reports purportedly from Dr. Stanley M. Karlan, D.P.M. See (R. 242-43). The reports reflect Plaintiff was treated twice for complaints of painful toenails. On the later visit, she was treated by debridement and medication for persistent painful neuromas and an intractable poro lesion.

In light of my conclusion that the ALJ's finding that Plaintiff could perform a limited range of light work is supported by substantial evidence, her additional contention is also without merit. Citing <u>Distastio v. Shalala,</u> 47 F.3d 348 (9th Cir. 1995), Plaintiff urges that the ALJ should have inquired further of the VE in this case to determine whether the jobs identified under the modified hypothetical were indeed light exertional or instead sedentary work. Plaintiff further urges that the ALJ's hypothetical was incomplete given Plaintiff's difficulties with her legs and feet. For instance, she argues that the ALJ should have inquired whether the position of sewing machine operator and bench assembler required the use of leg/foot controls. However, as the decision reflects, the ALJ did not rely upon the modified hypothetical or the jobs cited thereunder for decision. Absent a demonstration that the ALJ's residual functional capacity assessment is unsupported by substantial evidence, this contention need not be addressed further.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 3rd day of February 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record